UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DOUG LITTLEFIELD, ROBERT MOLLEUR and RODNEY BARRUP,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 2:06-0061** |
| | ) | **Judge Echols** |
| **CARL BENSON TILLEY, KATHERINE TILLEY, TILLEY FOUNDATION, INC., a Tennessee Corporation, and CT TECHNOLOGY, INC, a Nevada Corporation,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

Pending before the Court is the Motion to Dismiss (Docket Entry No. 11) filed by Defendants Carl Benson Tilley ("Carl Tilley"), Katherine Tilley (collectively the "Tilleys"), the Tilley Foundation Inc. ("Tilley Foundation") and CT Technology, Inc. ("CT"), to which the Plaintiffs Doug Littlefield ("Littlefield"), Robert Molleur ("Molleur"), and Rodney Barrup ("Barrup") have responded in opposition.

## I. FACTS

The Verified Complaint sets forth the following allegations. Each of the Plaintiffs are shareholders in the Tilley Foundation, a Tennessee corporation. Carl Tilley and his wife Katherine are directors of that foundation. (Docket Entry No. 1 ¶¶ 1-3). Assets from the foundation have been transferred to CT, a Nevada corporation.

Plaintiffs claim they purchased shares in the Tilley Foundation in the form of unregistered securities. Each of the shares was purchased for $1,000 based upon representations made by Carl Tilley that he owned new patentable technology which allowed cars and golf carts to run on batteries without being recharged by an outside source. The representations made by Carl Tilley were allegedly false and the shares are valueless. (Id. ¶ 8, 9).

The essence of Plaintiffs' Verified Complaint is that the Tilleys have engaged in fraud by duping investors into purchasing unregistered securities under the mistaken belief that there was a patentable invention which actually worked and concealing from those investors that the representations made by the Tilleys were false. The Tilleys allegedly took money invested in the Tilley Foundation to enrich themselves and engaged in racketeering activity to continue the ruse. Towards that end, the Tilleys conspired among themselves and with others, utilizing the mail and phone lines, to wrongly receive money from investors in numerous states and to continue the deception. (Id. ¶¶ 15-33). Plaintiffs aver that they were unable to discover the nature of Defendants' fraudulent scheme until recently. (Id. ¶ 34).

Plaintiffs' Verified Complaint is in eight counts. Those counts include allegations of fraud and deceit (Count One); breach of fiduciary duty (Count Two); conversion (Count Three); an action for accounting (Count Four); and violations of the Tennessee Securities Act (Count Five), the Tennessee Consumer Protection Act

(Count Six), and the Racketeer Influenced and Corrupt Practices Organization Act (Counts Seven and Eight).

## II. LEGAL ANALYSIS

Defendants raise assorted reasons for dismissal of Plaintiffs' claims. In support of their Motion, Defendants have submitted affidavits from the Tilleys, along with numerous documents.[1]

### A. Standard of Review

In evaluating the Complaint under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of Plaintiffs' allegations and resolve all doubts in Plaintiffs' favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). The Court should not dismiss the Complaint unless it appears beyond doubt that Plaintiffs cannot prove any set of facts in support of their claims that would entitle them to relief. See id. at 12. A Complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

### B. The RICO Counts

---

[1]Matters outside the pleadings are generally not to be considered in ruling on a Motion to Dismiss under Fed. R. Civ. P. 12(b). While the Court has the option to convert a motion to dismiss to a motion for summary judgment, the Court will not do so in this case given the numerous factual disputes between the parties at this time. Instead, the Court will reconsider any issues raised by the Motion to Dismiss in a properly presented Motion for Summary Judgment after the parties have had the opportunity to conduct discovery.

The federal RICO statute provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). To prevail on a civil RICO claim, Plaintiffs must allege and prove "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." Sedima, S.P.R.L v. Imrex Co., 473 U.S. 479, 496 (1985).

In 1995, Congress amended RICO by providing that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]." 18 U.S.C. § 1964(c). An exception is made if the individual charged with the conduct has been "criminally convicted in connection with the fraud." Id. See, Sias v. Herzog, 2006 WL 2418950 at *5-8 (D. Minn. 2006)(discussing 1995 Amendment); Uviles v. RYS Intern. Corp., 2006 WL 2346363 at *2 (D.P.R. 2006)(same).

Plaintiffs recognize that claims for fraud in the sale or purchase of securities do not establish a RICO claim, but maintain their RICO counts survive because "the claims for mail and wire fraud and the interstate transportation of stolen property have not been excluded from the Act[.]" (Docket Entry No. 20 at 3). However, the "amendment to the RICO statute was intended not only 'to eliminate securities fraud as a predicate offense in a civil RICO action,' but also to prevent a plaintiff from 'plead[ing]

other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.'" Stephenson v. Deutsche Bank AG, 282 F.Supp.2d 1032, 1071 (D. Minn. 2003). Hence, the fact that Plaintiffs have alleged mail and wire fraud does not save their RICO claims, and their reference to the transportation of stolen property appears "to be nothing more than a tautology." Davilla, 2006 WL 234363 at *2.

Nevertheless, the RICO claims will not be dismissed because Plaintiffs allege that Carl Tilley was indicted for, and convicted of, selling unregistered securities. (Verified Complaint ¶ 47). An inference to be drawn from those allegations is that Carl Tilley was "criminally convicted in connection with the fraud," as required by the exception to the securities fraud exemption in a RICO case.[2] Accordingly, the RICO counts will not be dismissed.

**C. Tennessee Consumer Protection Act Claim**

Defendants move to dismiss Plaintiffs' Tennessee Consumer Protection Act ("TPCA") claim on the grounds that securities claims are not within the ambit of that Act. In support of that argument, Defendants rely upon Nichols v. Merrill-Lynch, 706 F.Supp. 1309 (M.D. Tenn. 1989) and its progeny.

In a case of first impression, Judge Higgins in Nichols made an "Erie-guess" as to what the Tennessee Supreme Court would decide

[2]While Defendants attempt to explain the basis and nature of the allegations in the criminal case, they do so utilizing documentary evidence which is not properly before the Court on the pending Motion to Dismiss.

if it were presented with the question of whether the TPCA applied to the marketing and sale of securities. Judge Higgins concluded that the Tennessee Supreme Court would find no cause of action under the TPCA for claimed securities law violations. Based upon the reasoning in Nichols, other federal district courts have followed suit. See, Joyner v. Triple Check Financial Serv., 782 F.Supp. 364, 367-78 (W.D. Tenn. 1991); Hardy v. First American Bank, 774 F. Supp. 1078, 1084 (M.D. Tenn. 1991).[3]

Just recently, the Tennessee Court of Appeals was presented with the issue. In an extended discussion, the court in Johnson v. John Hancock Funds, 2006 WL 1864802 (Tenn. Ct. App. 2006) agreed with plaintiffs' assertion that "the Nichols decision has sent the law 'spinning off in the wrong direction,'" and that "[b]ased on the manner in which the Tennessee Supreme Court currently approaches issues regarding the scope of the Tennessee Consumer Protection Act . . . the Act applies to transactions involving the marketing, purchasing, and sale of securities." Id. at *5.

Nichols and Johnson represent diametrically different views of how the Tennessee Supreme Court would resolve the question presently before the Court and it falls upon this Court to make a prediction. When deciding an issue of state law in a diversity case, a federal court must apply the law of the state's highest court. Erie R.R. v. Tompkins, 304 U.S. 64 (1938). Where the

[3]With no discussion, the Tennessee Court of Appeals in DePriest v. 1717-19 West End Associates, 951 S.W.2d 769, 774 (Tenn. App. 1997) observed that "federal courts have held that the Consumer Protection Act does not apply to the sales of securities."

state's highest court has not addressed the issue, the federal court is to look to "all relevant data, including the state's intermediate court decisions." Ellis ex. Rel Pendergrass v. Cleveland Mun. School Dist., 453 F.3d 690, 698 (6th Cir. 2006). Decisions from the intermediate courts "should be followed absent a strong showing that the state supreme court would act in a different manner." Id. (citation omitted); see also, Colliers Lanard & Axilbund v. Lloyds of London, 2006 WL 2327039 at *3 (3rd Cir. 2006)("Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise.").

Seventeen years have elapsed since the decision in Nichols and consequently that court did not have the benefit of the Tennessee Supreme Court's decision in Myint v. Allstate Ins. Co., 970 S.W. 2d 925 which held that the TCPA applies to the acts and practices of insurance companies, even though, like the securities industry, the insurance industry is heavily-regulated and state law provides specific remedies for bad faith. Nor could the court in Nichols (which expressed concern about Tennessee being "in a minority of one") have foreseen that in the intervening years "at least six other states appear to have held that their unfair and deceptive trade practices statutes apply to the marketing, sale, or purchase of securities." Johnson, 2006 WL 1864802 at *7 n.16.

Given the evolution of the law in this area, as well as "the Tennessee General Assembly's desire to make the remedies available under the Tennessee Consumer Protection Act broadly available to all consumers, including consumers who have other remedies available under other regulatory schemes," id. at *6, the Court concludes that were the Tennessee Supreme Court presented with the issue it would determine that acts or practices in connection with the marketing or sale of securities are covered by the TPCA. Therefore, Defendants' Motion to Dismiss Plaintiffs' TCPA claim will be denied.

**D. Statutes of Limitations**

Defendants have moved to dismiss the breach of fiduciary duty claim because it was not filed within one year of the breach as required by T.C.A. § 48-18-601. Defendants also seek to dismiss the securities fraud claims because they are subjected to a two-year statute of limitations under T.C.A. § 48-2-122(h). Finally, Defendants assert Plaintiffs' fraud and conversion claims are barred by the three-year statute of limitations provisions contained in T.C.A. § 28-3-105.

In support of these arguments, Defendants have supplied Affidavits from the Tilleys in which they explain that allegations of fraud in relation to the alleged discovery at issue in this case were made as early as 2002, a story was aired about the allegations on local television in early 2003, and the Tennessee Bureau of Investigation conducted an extensive investigation beginning in 2003. These Affidavits and supporting documents are not properly

before the Court on a Motion to Dismiss and, in any event, do not conclusively show that Plaintiffs had sufficient knowledge of fraudulent activity to bring their claims earlier. According to the Verified Complaint, which for present purposes must be accepted as true, Defendants took measures to conceal their fraud and Plaintiffs only were able to discover the fraudulent scheme recently.

The limitation provisions for breach of a fiduciary duty and securities fraud contain a statute of repose. T.C.A. 48-18-601 (breach of fiduciary duty claim shall be brought within one year of act or one year of discovery); T.C.A. § 48-2-122(h)(securities claim must be brought within two years of act or transaction, or within one year after discovery). Similarly, the statute of limitations for fraud and conversion can be tolled where there is fraudulent misrepresentation. Peros Steak and Spaghetti House v. Lee, 90 S.W.3d 614, 622 (Tenn. 2002). In this case, the Court has no basis to decide definitively when the Plaintiffs knew, or reasonably should have known, of the Defendants' alleged fraud and therefore the motion to dismiss on statute of limitations grounds will be denied.

**E. Accounting Claim**

Defendants claim that Plaintiffs' request for an accounting must fail because they have not presented such a request to the Tilley Foundation in writing and therefore have not complied with T.C.A. § 48-26-101. Regardless of whether a written request is tendered, the statute relied upon by Defendants specifically

provides that it "does not affect: (1) the right of a shareholder to inspect records under § 48-17-201 or, if the shareholder is in litigation with the corporation, to the same extent as any other litigant; or (2) the power of a court . . . to compel the production of corporate records." These exceptions for cases in litigation reinforce the statutory right of shareholders to inspect corporate records, including the accounting records. Dobbs v. Guenther, 846 S.W.2d 270, 277 (Tenn. Ct. App. 1992). In any event, Plaintiffs state that they have now provided a written request for an accounting to be held on August 23, 2006 at 10:00 a.m. Accordingly, the request for an accounting will not be dismissed.

**F. Other Shareholders and the Tilley Foundation As Plaintiffs**

Finally, Defendants claim that both the Tilley Foundation and the other shareholders should be named as Plaintiffs. They argue that if the foundation and the shareholders are joined as Plaintiffs the case would have to be dismissed because diversity jurisdiction would be lacking.

In support of the argument that the Tilley Foundation should be joined as a Plaintiff, Defendants cite Liddy v. Urbanek, 707 F.2d 1222 (5th Cir. 1983) for the proposition "that a company alleged to have been injured by wrongdoing should be classified as a party plaintiff due to the interest of the shareholder plaintiffs." (Docket Entry No. 12 at 13).

Defendants paint Liddy with too broad a brush. In Liddy, the Fifth Circuit made the following observation with respect to shareholder derivative lawsuits:

Case 2:06-cv-00061 Document 23 Filed 09/07/06 Page 10 of 14 PageID #: 184

> [A]s a practical matter, the corporation is initially named as a defendant. In this way the stockholder insures the presence of the corporation as an indispensable party. Once joined and present before the court, the corporation is then realigned, if necessary, according to its real interests . . . . Thus, in theory the corporation should be realigned as a plaintiff in a stockholder's derivative action since as the real party in interest it stands to benefit from a successful suit . . . . This principle is modified, however, by the necessity of producing an actual controversy or real collision of interests between the parties . . . . For this reason, the corporation properly remains a defendant in a stockholder's derivative action whenever the corporate management is "antagonistic" to the plaintiff shareholder . . . . In other words, if the management of the corporation is actively aligned against the plaintiff shareholder and his lawsuit, then the shareholder and the corporation are actually on opposing sides of the controversy, and the corporation is properly named as a defendant.
>
> [I]f the complaint in a derivative action alleges that the controlling shareholders or dominant officials of the corporation are guilty of fraud or malfeasance, then antagonism is clearly evident and the corporation remains a defendant . . . . On the other hand, if the individual plaintiff is the majority stockholder or a controlling officer, then the corporation cannot be deemed antagonistic to the suit and it should be realigned as a plaintiff.

Liddy, 707 F.2d at 1224-1225.

In this case, the allegations are that the Tilleys, who apparently are the predominant or controlling shareholders, engaged in fraud. An inference to be drawn from the allegations in the Verified Complaint is that there is a collision of interests between the Plaintiffs and the Tilley Foundation. It is simply premature for the Court to be able to determine the actual dynamics of the individuals and corporate entities in this case based upon the pleadings.

In a two-sentence paragraph which quotes a portion of Rule 19 and cites an inapposite case,[4] Defendants also assert that the other shareholders must be made parties to this lawsuit and that their joinder would destroy diversity. The essence of the argument is that disposition of this action without the other shareholders' presence would subject Defendants to the risk of incurring multiple or inconsistent obligations.

So far as relevant, Rule 19 provides that a "person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may . . . (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." The burden is on the movant (here Defendants) to show the relief Plaintiffs seek requires the joinder of other parties. Symetral Life Ins. Co. v. Rapid Settlements, Ltd., 2006 WL 2382250 at *7

[4]Defendants cite Paglin v. Saztec Intern., Inc., 834 F.Supp. 1201 (W.D. Mo. 1993) which involved a corporation and its president, developer and principal shareholder who filed suit in relation to the sale of the corporation to the Defendant. The individual Plaintiff was found to be an indispensable party because of his controlling interest in the corporation but since he was a United States citizen who did not live in this country, the court's diversity jurisdiction could not be properly invoked.

Case 2:06-cv-00061 Document 23 Filed 09/07/06 Page 12 of 14 PageID #: 186

(S.D. Tex. 2006); Citizens Against Longwall Mining v. Colt LLC, 2006 WL 1989888 at *8 (C.D. Ill. 2006).

The Court has insufficient information before it to determine whether there are other shareholders who claim an interest similar to that of present Plaintiffs such that their absence will result in Defendants incurring the risk of inconsistent or multiple obligations. This is particularly so since the same wrongful conduct of a corporation may give rise to both individual shareholder claims and derivative claims. Haig, BUSINESS AND COMMERCIAL LITIGATION IN FEDERAL COURTS, *Derivative Actions by Shareholders* § 17:3 (West 2005). Without the requisite information to make the inquiry required by Rule 19(b), the Court may deny a motion to dismiss for failure to join an indispensable party. Powers v. Cancer Screening Servs., 1997 WL 97110 at *3 (D. Maine 1997).

Furthermore, Defendants' underlying premise – that this action would necessarily be dismissed if either the Tilley Foundation or the shareholders were made Plaintiffs because diversity would be destroyed – is incorrect. As already discussed, Plaintiffs have pled RICO violations and this gives the Court federal question jurisdiction over the lawsuit. 18 U.S.C. § 1965(a); Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1254 (5th Cir. 2005); Poulos v. Caesars World, Inc., 379 F.3d 654, 662 (9th Cir. 2004).

## III. CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss (Docket Entry No. 11) will be denied. Plaintiffs' Application for

a Preliminary Injunction (Docket Entry No. 12) will be set for a hearing.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE